All rise. The Illinois Department of Court Court Provision is now in session. Honorable Justice David R. Navarro is presiding. You be seated, everybody. Thank you, Your Honor. Good morning, everybody. We have the matter of Jericho Hines set. Each side is going to be given 15 minutes to argue their side of the case for the appellate. You'll be given five minutes in rebuttal. You don't have to reserve any rebuttal time. If you could introduce yourselves when you approach the podium, that would be helpful to us. Remember that the microphones do an excellent job of recording the proceedings, but not as good of a job of amplifying your voice. And so if you can keep your voice up, that would be helpful. All right, if you're ready. Good morning, Your Honors. And may it please the Court. My name is Emma Korman from the Office of the State Appellate Defender, appearing here on behalf of Mr. Jericho Hines, the appellant. Jericho Hines was tried on an unproven count of aggravated battery with a firearm. The state knew it was unable to produce the victim listed in the indictment. Cherie's hair is a witness, but forged ahead regardless, even though her identity was an essential element of the offense. This charge of aggravated battery was vacated post-trial, but not before the jury was exposed to unfairly prejudicial testimony, video, and argument highlighting her gunshot wounds, which exceeded the bounds of relevancy. This included body cam footage of a slight older woman standing in a pool of her own blood, supported by responding personnel, as well as testimony from an officer who described applying a tourniquet, and also the application of that tourniquet. Given the prejudicial and inflammatory nature of this evidence, Hines must receive a new trial. Did the defendant object to any of those comments, any of the admission of that, any of the evidence at trial? Defense counsel did object at what I would argue was his first opportunity, which was the motion for a directed verdict. Until the state completed its case, he had no reason to believe that the state would not elicit some sort of testimony regarding her identity. So viewed through that lens, he did raise it as his first available opportunity. He also objected repeatedly during closing, when references to Ms. Hare's identity was raised. And he was repeatedly cut off by the trial court in an attempt to do so. It should be viewed as almost a threshold issue. The trial court was clearly not amenable to the idea that this identity issue foreclosed the prosecution, and therefore, it would have not been a viable objection for him to also object to the related evidence. Was there race in the post-trial motion? In the post-trial motion, the motion for a new trial, he raised prejudicial inflammatory evidence related to statements that Hines had shot Cherie's hair. That, in combination with his objections of the directed verdict, does preserve. So you're arguing that that statement in the motion for a new trial was sufficient to save, to preserve his argument about the relevancy of that information, of that evidence? In combination with his objections during closing, as well as motion for a directed verdict. We do also argue for a sponge cleaner. Why wouldn't they be allowed to introduce testimony regarding the injury to the victim to prove the armed habitual? I'm not suggesting that this was not relevant to the other counsel specifically, that a real firearm was used. But what I am suggesting is that this was not relevant to the other arguing is that in the aggregate, this had a cumulative effect of becoming prejudicial rather than probative. The evidence regarding the wounds and Ms. Harris' injuries was really quite extensive. Officer Posey describing applying a tourniquet, that the wound was bleeding substantially, but that's not even enough. He then goes on to narrate the body cam footage that's played to other officers, describe pools of blood, photographic evidence is introduced, and the state emphasized in closing, the state emphasized in closing, you saw the blood, you could see the wound. So again, not suggesting it's entirely devoid of probative value, but in the aggregate, it's inflammatory and unfairly prejudicial. In the aggregates, you're saying, what's the aggregate? Because in the absence, this is a non-habitual coming out or a charge, a weapons charge, without a weapon. So the state's trying to prove this circumstantially. So those, what you're characterizing as in the aggregate, are the circumstances that give rise or prove, could prove, a gunshot wound. Right? In the aggregate, it crosses over. Any one piece of evidence could have been sufficient to prove. For example, I believe Officer Posey's testimony could have been something like responding to the scene of a report of a gunshot wound, observing the wound, and based on his own experience responding to gunshots, that it appeared to be a gunshot wound. That in and of itself would have been sufficient. Should also note, even aggravated battery just requires evidence of, quote, any injury, not greatest bodily harm or anything along those lines. But it's aggravated battery with a firearm. That's correct. Okay, so the state has to be able to prove that it is a firearm that caused it, not just an injury. That's correct. But again, just evidence suggesting that it was a gunshot wound would be sufficient. An application of a tourniquet, this video of a woman standing around blood, this really crosses the line into unfairly prejudicial. Was there some discussion about an ice pick? That this could have been caused by an ice pick? In closing, defense counsel suggested that there wasn't sufficient evidence to prove that there had been a firearm used, saying we don't know what caused that injury, could have been an ice pick. What you could have seen on the video is flare gun. Obviously, the jury did not find that very compelling. But then that does go to say, well, the jury has to be given the circumstances, should be given the circumstances surrounding that injury. So that when it's argued that this was not, in fact, a gunshot wound, this was an ice pick attack, that there's evidence that could corroborate the officer's testimony that it was a gunshot wound. That's the photographs of the pod video, the E.T. scene photos of the blood on the sidewalk. All those are corroborative of what the officer is talking about, right? It is corroborative of the fact that there was a firearm used. In the aggregate, I do think it crosses over into prejudicial. Do you have another argument to make besides the fact that the testimony of the alleged victim? Besides that issue? I do have a second argument I can move on to. Moving on to argument two, Hines was stopped on the basis of a few big details of the shooting provided by pod cameras. When stopped, police knew the shooter drove a white Chevy Equinox, that the shooter wore a gray or black t-shirt, and that he was a black male. Hines was also stopped around 20 minutes after the shooting, somewhere near the scene. What the police had at the time of the stop was reasonable suspicion, but it did not ripen into probable cause. At the motion to suppress hearing, the judge found that the mere admission that Hines possessed cannabis was sufficient. No cannabis was recovered, and burnt marijuana on its own does not provide probable cause. So really, testimony, I was trying to see where the testimony was, whether this was burnt or raw. It's an inference. Mr. Hines told officers that there was cannabis in the vehicle. One officer said he smelled an odor of cannabis, and none was recovered. I think considering that there was an odor, we can infer that it was burnt marijuana. I don't see any evidence that it was raw marijuana. Right, I mean, there's no marijuana, either way, there's no marijuana recovered, but at least there's some case law that would seem to say that it matters whether it's raw or burnt. That's accurate, and without any evidence in the record that there was any raw marijuana present. You would say, then, the presumption is that it's burnt? I'd say the presumption is that it was burnt, or that there was no marijuana there at all. Well, no marijuana was found, though, right? No marijuana was found. They did find cocaine, though, right? They did find crack cocaine after that admission led them to start a search of the vehicle. So is this an illegal stop? The stop was not illegal, but the search was at issue. So the stop was good, but the search was bad? Yes, they had reasonable suspicion to stop the vehicle based on white Chevy Equinox in the area of the shooting. It was perfectly appropriate to stop his vehicle and inquire further, but it never ripened a probable cause that would have justified the search of the vehicle.  Because they never took additional steps to find any inculpatory evidence before starting the search. All they knew at that time was of this apparent smell of marijuana, but in and of itself, that's not sufficient to justify search of the vehicle. Well, it wasn't in and of itself. They also had Mr. Hines' admission that he had cannabis in the car, right? So that distinguishes it a little bit from Richmond and Molina where you have the defendant's admission to the police officer that he had cannabis in the car, right? I believe in the Redmond case that there was the smell of marijuana. And I believe also a slight corroboration that perhaps someone smoked marijuana some time ago. So I think it's quite similar to the Redmond case where there was a failure to produce a driver's license, but that in and of itself did not rise to reasonable, I mean, to probable cause. But this is much different than no DL. This isn't a traffic stop. This is 20 minutes after a shooting, two blocks away from the shooting, same vehicle, or a vehicle, not same vehicle. I thought the state would say same vehicle, but the vehicle matching the description, white, Chevy, Equinox, roof rack. Now, blocks away from the shooting, the defendant is found in there. So it's more than just smell of cannabis, admission of cannabis, and Redmond, no DL. This is a much different situation. Two things. One is that the marijuana and the evidence of the shooting should be treated separately in terms of whether or not they rise to probable cause. The smell of the marijuana is probative of the possible crime that an individual may have been smoking in the car while driving. It has nothing to do with the shooting. So in terms of analyzing the shooting, we should analyze it in isolation, which in this case, white Chevy Equinox, person with dark skin, black or gray t-shirt. This is a pretty vague description. As one officer said on the stand, there's thousands of white Chevy SUVs in Illinois. Lots of them, but... Sorry. There are thousands of SUVs, white SUVs in Illinois. Okay. But we're not in the state. We're two blocks away, 20 minutes after. That's a much... Now our world has really shrunk than the state of Illinois, all registered vehicles with white, all registered white SUVs. So the fact that there's thousands of SUVs really I think is kind of a red herring. It's... We're focused on that moment in time. So how many white SUVs are there in the neighborhood? I don't know of... I don't have personal knowledge of that, and nor does it appear in the record. More than one? Less than a thousand? In the record, we have an officer saying hundreds in the state. Excuse me, thousands in the state. I think we can assume that in Chicago there may be a number of white SUVs anywhere at any one time within the state of Illinois. I agree that there is reasonable suspicion to pull over the car and inquire further. But at that point, it wasn't sufficient for an arrest. And I would point to the Redding case, which I think has a lot of factual similarities, where someone observed a bar fight called 911 with a description, and that individual was then pulled over. But ultimately, that was not enough for a warrantless arrest. There had to be additional inquiry to confirm that this driver who met this description committed that crime. And so is the case here. But we're not talking about the arrest at this point, right? Once they find the cocaine, I think you would agree they had probable cause to arrest him on the drug charge. That's correct. Although he wasn't charged with correct cocaine. Right. But at that point, they had probable cause to arrest him on the drug charge. Yes. And we're talking about the search. So aside from the cannabis, and I understand your argument to separate the cannabis issue from the shooting, is your argument that the police did not have probable cause to search the car at that point related to the shooting investigation? That is my position. Okay. And they did not have probable cause to search on the basis of marijuana either. Well, they searched the car and they didn't find no gun, right? They didn't find any gun, no bullets, no shell casings. So what should the trial judge have done? He should have suppressed his statement. Why? Because it was the fruit of this illegal search which led to this arrest. Okay. So should we send it back for an attenuation hearing then? Is that what you're requesting? Attenuation argument the state makes is not compelling in my view. Their argument is that there were intervening circumstances where he was confronted in regards to additional pod camera footage. But if you look at his statements to police before he says that he shot a firearm, it's not in reaction to that confrontation. He's just simply asked, did you shoot a firearm? And he responds, yes. Then they preface that by saying something like, we already know what happened, so you might as well tell us what happened. That does take place on the video, but again, it's not connected directly to what he ultimately admits. Intervening circumstances here were not enough to purge the taint of that initial illegality. That being said, we do argue in the alternative that we would ask this to go down for an attenuation hearing if this court believes that there's possible attenuation here. A little time left? Or do you want to reserve the rest of your time for rebuttal? I will reserve the rest of my time. Thank you very much. Thank you. Yes. Can you start by telling us your name before you begin? Yes. Good morning. May it please the Court. I'm Assistant State's Attorney Taylor Dahl, and I'm here on behalf of the people in this case. Dahl. D as in David, A-L-L. Thank you. Yes, absolutely. Your Honors, there was no error in this trial, neither in the admission of evidence, how it proceeded, nor in the admission of the defendant's statement. First, as to the evidence, it is quite a presumption to call a State's charge unprovable as it relates to what evidence the State is allowed to and must present in order to meet their burden in a trial. All evidence presented, as this Court suggested, was entered to prove all charges that were before the Court. And that evidence was properly before the Court as relevant and probative as all three charges required the State to prove that a gun was involved. Did the defendant possess a real firearm? And did he fire a real firearm? And did that bullet strike Cherise Hare? So the fact that the name Cherise Hare didn't come in at trial was not any intentional act, but rather an oversight by the State? The record demonstrates it was not an intentional act at all. I don't, I wasn't involved, of course, wasn't involved in the preparation or decision-making of this case, and I can't say what happened. I can say that in a, in general, in a trial, it is, there are many ways to enter in identity evidence. You do not, it is, a victim or a person themselves is not required to be there to state their name. That's not part of the proposition of any of the crimes that involve a victim, and it's not a required element of any crime. Just that this person was shot. That was not entered in the evidence for whatever reason, and that is the situation that we have to deal with now. Because counsel said, from Jump Street, the State said in an opening statement, we're not going to call the victim here. They did. They knew she wasn't going to be present, and they did the best they could based on the evidence that they had, which is something that we have to do on a regular basis. In murders, the most notable example, that there is never a victim that's going to testify. We do the best we can, given that the best person to tell what happened to them is not going to be present. So, too, in this case, we had to use the best evidence available to describe what happened to Ms. Hare and try and prove, meet our burden that this defendant didn't backfire a real gun and hit her with a bullet. All the evidence presented went toward that end. As counsel mentioned in the brief, and as the issue came up at trial, there was no gun, there was no casing, there was no other ballistic evidence. The best and only evidence we had was that this was a gunshot wound, and all evidence presented was probative of that fact. That was in question and was challenged by the defense at trial. And the evidence that was presented did not rise to the level of unduly prejudicial, or its prejudicial weight was not unfair or overshadowed the probative value in this case. Counsel refers to trial counsel's first opportunity to object. That's accurate, and it goes directly to our point. He had no reason to object to this evidence at the time, because he knew that it was probative and relevant to the charges that they were facing. Moving to argument number two. Again, this was a fair trial where all evidence admitted was properly before the court. You're arguing about the search. Is your argument that the search was valid based on the canvass or based on the shooting? In my brief, I argue that it's valid based on both. It's a stronger argument. Well, both are equally strong, but I wanted to focus more here on the argument that the arrest itself was valid. It's valid based on probable cause to believe that this defendant was the individual that fired the weapon at that time. I mean, the arrest was the cocaine. That was the arrest, right? According to police report, well, actually, according to police report, it lists the shooting charges as the arresting offenses. So, initially, the evidence came out that the officers were going with smelling cannabis, looking at the cocaine. That is an arrestable offense. That's not what ended up being charged, as, of course, the shooting is much more serious than a rock of cocaine. Right. Well, whatever they end up ultimately charging is on the arrest report. Right. They're not going to lead with the possession of rock cocaine where they have the shooting. Sure. The defendant's not challenging the arrest and not challenging the stop. Which is an interesting point. Sorry, I didn't mean to interrupt. My understanding from Ms. Portman's argument is they're challenging the search. And you're saying it's justified on both grounds, the cannabis grounds and the shooting grounds. Yes. The officers had a right to search for a weapon, knowing what they knew at the time. And there was the additional separate justification for the smell of cannabis. It is true that the record doesn't state whether the officer said it was burnt or fresh cannabis, but I disagree with the defense inference here that it was burnt. The defendant admitted at scene that he possessed cannabis, present tense, not that he had cannabis at some point. You cannot possess, consume, or burn cannabis. His admission that he possessed cannabis and the officer smelled a strong odor of cannabis. It's a greater inference that that cannabis that he admitted to possessing was fresh. As such, given that, the search would be justified based on the case law that was mentioned, and I quote in my brief. Additionally, to Your Honor's point, nothing that was recovered from the search was used in obtaining the statement. They're not seeking to suppress the drugs. They're not seeking to suppress anything that was a fruit of the search. This motion contests the legality of the search. However, the statement was obtained based on evidence gained through pod camera footage and confrontation of the defendant with that evidence. But there was no actual evidence per se. In other words, the police officers came in and say, we already know what's happening, so you want to help yourself, tell us what happened. I'm sorry, I missed the beginning of your question. In other words, what was the evidence? On the podcast, you can't see who did the shooting, right? You can't directly identify the individual. There's a license plate on the vehicle, right? There was a license plate. Right, but it wasn't identified until they found a white car driving around in the neighborhood later, right? So we're not even sure it's the same car, right? Certainty is not required, however. Right. At the time of the shooting. So certainty wasn't required, so the police go into the room to interview the suspect and say, we already know what happened. Correct. So what evidence are you talking about? They didn't have any evidence until he essentially made the statement. I would disagree with that. They did have evidence. They had the initial information that they had at the time of the stop, which was? A black man in a white car. With a dark shirt and a white Equinox with a unique aftermarket roof rack. A unique what? A unique aftermarket roof rack. The roof rack is described as aftermarket. It's not something that comes on every car. Right. It's not something that's necessarily going to be on any one of the quote unquote thousands of cars in the state. How many of the thousands of cars in the state does have a rack? Do you know? I have no idea. More than one, less than a thousand? Probably more than one, but I can't begin to guess. The record witness testified, one of the officers testified, that that's the only white SUV he saw in the area at that time. And we're dealing with a small area, a two block radius, in the span of 20 minutes. And that's the only white SUV that was observed, especially with this black roof rack. Aftermarket, of course, being something that's not standard on each vehicle, so it has a unique identifier. And confronted with the evidence from the pod camera, from the license plate reader, which did note the license plate, which came back to the defendant's mother, they go into the interview armed with that information, confirming at each step that he was at, each location that was seen, that you can see the white vehicle on the pod cameras, confirming his identity. And then once his identity is confirmed, like, yes, you were in this car here, you were in this car here, you were in this car here, this happened, this happened, this happened, you shot that gun. This is not a long statement. This is not hours of protracted back and forth. This was, I don't remember the exact timing, but it was, it didn't take long to watch it, it didn't take long to hear it, it didn't take long to publish it before the jury. This is, as far as immediacy goes, these things happened in sequential order over the course of a few minutes. And all these, everything that we're talking about here was presented to the jury and was challenged? Correct. It was presented to the jury, it was, the officers were cross-examined, the detective was cross-examined on all of this, and the jury still returned a verdict of guilty. So I would argue that this is, all this statement was in reaction to the confrontation using the evidence that was obtained independent of the search. As to the third issue in this case, the individual criminal statute in this state has been repeatedly affirmed on any ground that one could take from the Bruin case and the cases that followed. Certainly there is some debate on the first premise of whether convicted felons are included in the people, argument that it is not, that it's not the case. Bruin repeatedly refers to law-abiding peaceful citizens multiple times, I believe it was 14 times. That language has been repeated in subsequent U.S. Supreme Court cases that I cited in my brief, as well as adopted by this Court by numerous panels. As far as historical analysis, I ask this Court to follow the cases that have already decided this issue and held that the individual statute is constitutional and that there is historical, and there's plenty of historical analogs for deciding dangerous felons. Based on that, Your Honors, I would ask that you affirm the defendant's convictions, conviction and convictions and sentence in this case. Thank you, Counsel. You may want to adjust the mic. Thank you. The State takes issue with the statement that the charge was unprovable. Well, the fact of the matter is the charge was unproven. They aggravated battery because they didn't elicit that evidence regarding her identity, led to the introduction of all this evidence. But unproven is different than unprovable. I think unproven would have been a more accurate choice of words. There is, of course, any number of ways you could elicit a person's identity, but it did not take place. So I will say unproven is probably a better choice of words. But intentionality on behalf of the State is irrelevant as it relates to the aggravated battery. What is relevant is what it led to, which is when we tried on that unprovable count, the State presented inflammatory and prejudicial evidence that outweighed its probative value. The description of the shooter was not specific enough in and of itself to justify the search. The State raised that there was an aftermarket roof rack. Again, that's not a unique characteristic. Aftermarket suggests that you could buy it from any number of retailers, Amazon, Target. Also, as far as marijuana justifying the search, that's really a foregone conclusion under Redmond. Also, the State mentioned that they, as I understood his statement, the license plate was known at the time of the interview. I believe that's not accurate. I think it took additional time for them to process the video footage to be able to see what the license plate was. Just wanted to make that clear. Do they get the license plate number off the video? They do, but from my understanding, I'm not privy to the technology, but it requires some sort of additional processing for it to be visible. And that's why it took a considerable amount of time, even after the pod video footage was obtained. But they are, during that interview, they are walking Mr. Hines through, saying, your vehicle's observed here. This is what we know. We know your vehicle's observed here. We know your vehicle's observed here. Right? Yes, and what they're referring to is footage of a white Chevy Equinox. They're not referring to the license plate. With the black roof rack? Yes, which I would argue is not, it's hardly a distinctive characteristic. That ultimately ends up at the gas station where they find Mr. Hines. Yes, it was in the area of the shooting 20 to 30 minutes later. Okay. The state also emphasized the short time that took place between the arrest and the discussion. Again, that actually weighs against attenuation. The case law suggests that a long period of time before questioning may compel an individual to want to come forward and discuss. So I just want to point that out as well. We ask pursuant to Argument 1, we request that this be remanded for a new trial given the prejudicial inflammatory nature of the evidence. Pursuant to Argument 2, we ask that this court reverse Hines' conviction and remand for a new trial with instructions to suppress his inculpatory statement. Alternatively, this court should remand for a hearing to determine whether Hines' statement was attenuated from his unlawful arrest. Thank you. Thank you, Counsel. All right. We'll take this matter under consideration and issue an opinion in due course.